PARKS v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket Nos. 75437, 75438. Argued March 4, 1986 (Calendar No. 2).
    Decided October 3, 1986.

Wayne Parks brought an action in the Muskegon Circuit Court
    against the Detroit Automobile Inter-Insurance Exchange, his
    personal automobile insurer, and Roadway Express, Inc., his
    self-insured employer, seeking no-fault benefits for injuries
    suffered in the course of his employment in a trailer owned by
    his employer. The plaintiff subsequently added the Michigan
    Department of State Assigned Claims Facility as a defendant.
    The court, James M. Graves, Jr., J., granted summary judg-
    ment for the employer, finding that, because the trailer in
    which the plaintiff was injured was not required to be regis-
    tered in Michigan pursuant to a multistate registration agree-
    ment and because it had been operated in Michigan for less
    than thirty days within the calendar year in which the plaintiff
    was injured, the employer's ownership of the trailer could not
    subject it to liability under the no-fault act. The court further
    held that the DAIIE was required to provide no-fault benefits for
    the plaintiff. The Court of Appeals, MacKENZIE, P.J., and J. H.
    GILLIS and FITZGERALD, JJ., reversed (Docket Nos. 69520,
    70751). The employer appeals.

    In an opinion by Chief Justice WILLIAMS, joined by Justices
    BRICKLEY, BOYLE, and RILEY, the Supreme Court held:

    An out-of-state vehicle not required to be registered in Michi-
    gan and not operated within the state for more than thirty
    days in a calendar year is not subject to the security or
    payment priority provisions of the no-fault act; where an
    employee is injured while an occupant of such a vehicle owned

REFERENCES

Am Jur 2d, Automobile Insurance §§ 20 *et seq.*, 28 *et seq.*, 340 *et
    seq.*, 348 *et seq.*, 351 *et seq.*, 357.
Validity and construction of "no-fault" automobile insurance plans.
    42 ALR3d 229.
See also the annotations in the ALR3d/4th Quick Index under No-
    fault Insurance.

by an employer, the personal automobile insurer of the employee is liable to pay personal protection benefits.

1. Owners or registrants of motor vehicles required to be registered in Michigan must maintain security for payment of personal protection benefits under § 3101(1) of the no-fault act. Nonresident owners or registrants of motor vehicles not registered in the state may not operate or permit such vehicles to be operated within the state for more than thirty days in any calendar year under § 3102(1) unless security for payment of benefits is continuously maintained. However, the state may enter into reciprocal compacts with other states regarding the operation and registration of trailers in interstate commerce. Under a compact applicable in this case, the trailer in which the plaintiff was injured was not required to be registered in Michigan. Thus, it was not subject to the mandatory security requirement of § 3101(1). In addition, the trailer was not operated within the state in excess of thirty days at the time of the plaintiff's injury and, thus, was not subject to the mandatory security requirements of § 3102(1).

2. Generally, persons injured in automobile accidents must look to their own insurers for no-fault benefits. The provision of § 3114 that employees injured in vehicles owned by their employers should look to the insurer of the employer's vehicle for payment of benefits applies only to vehicles required to be registered in Michigan. Thus, where, as in this case, the vehicle in which an injury occurs was not required to be registered in the state, the general rule applies.

3. The employer in this case, as a self-insurer, is not an insurer authorized to transact business within the state, and thus it is not required to provide personal protection insurance under § 3163. That section applies to cases in which injury arises out of the ownership, operation, maintenance, or use of a motor vehicle by an out-of-state resident. The plaintiff's injury arose out of the use of the trailer by the plaintiff, a Michigan resident. The employer is not subjected to liability merely because it owned the trailer. Under § 3163, it would be liable only if it were an insurer authorized to transact automobile liability insurance in the state.

4. A person entitled to no-fault benefits may obtain benefits from the Assigned Claims Facility under § 3172 where no personal protection insurance is applicable to the injury, no such insurance can be identified, or the only identifiable insurance is inadequate because of the financial inability of one or more insurers to fulfill their obligations. In this case, it is clear that the plaintiff's own personal protection insurance is appli-

cable to the injury, and his insurer cannot escape liability or shift its burden of coverage to the Assigned Claims Facility.

Reversed.

Justice CAVANAGH, joined by Justice ARCHER, dissenting, stated that where an employer's vehicle is not insured the no-fault insurer of an injured employee's personal automobile is liable for payment of personal protection insurance benefits. However, where an employer's vehicle is insured, including situations in which the vehicle is self-insured, the employer's insurer is liable to pay such benefits. An employee need only show that the injury occurred while occupying a motor vehicle owned or registered by the employer to recover benefits. The employer's vehicle is not required to be registered in the state or subject to the state's no-fault mandatory security provisions.

Justice LEVIN, dissenting, stated that the term "owner or registrant of a motor vehicle" as used in § 3114 of the no-fault act is not qualified by the concept "required to be registered in this state." There is no basis consistent with § 3163 of the act for differentiating the liability of insurers depending on whether an insured vehicle was registered in this state. Nor is there a basis to construe the act to provide that a self-insured under § 3101(4) has less responsibility than an insurer or to transfer the responsibility of a self-insured to an insurer.

138 Mich App 520; 360 NW2d 238 (1984) reversed.

OPINION OF THE COURT

1. INSURANCE — NO-FAULT — OUT-OF-STATE VEHICLES — INJURED EMPLOYEES.

An out-of-state vehicle not required to be registered in Michigan and not operated within the state for more than thirty days in a calendar year is not subject to the security or payment priority provisions of the no-fault act; where an employee is injured while an occupant of such a vehicle owned by an employer, the personal automobile insurer of the employee is liable to pay personal protection benefits (MCL 500.3101[1], 500.3102[1], 500.3114; MSA 24.13101[1], 24.13102[1], 24.13114).

2. INSURANCE — NO-FAULT — OUT-OF-STATE VEHICLES — INTERSTATE COMPACTS — MANDATORY SECURITY.

Entry by the state into a reciprocal compact with another state regarding the operation and registration of trailers in interstate commerce rendered a trailer which was not required to be registered in Michigan under the compact not subject to the mandatory security requirement of the no-fault act (MCL 500.3101[1]; MSA 24.13101[1]).

3. INSURANCE — NO-FAULT — OUT-OF-STATE VEHICLES — MANDATORY SECURITY.

Owners or registrants of motor vehicles required to be registered in Michigan must maintain security for payment of personal protection benefits; nonresident owners or registrants of motor vehicles not registered in the state may not operate or permit such vehicles to be operated within the state for more than thirty days in any calendar year unless security for payment of benefits is continuously maintained (MCL 500.3101[1], 500.3102[1]; MSA 24.13101[1], 24.13102[1]).

4. INSURANCE — NO-FAULT — ASSIGNED CLAIMS FACILITY.

A person entitled to no-fault benefits may obtain benefits from the Assigned Claims Facility where no personal protection insurance is applicable to the injury, no such insurance can be identified, or the only identifiable personal protection insurance applicable to the injury is, because of financial inability of one or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed (MCL 500.3172; MSA 24.13172).

DISSENTING OPINION BY CAVANAGH, J.

5. INSURANCE — NO-FAULT — INJURED EMPLOYEES.

*Where an employer's vehicle is not insured the no-fault insurer of an injured employee's personal automobile is liable for payment of personal protection insurance benefits; however, where an employer's vehicle is insured, including situations in which the vehicle is self-insured, the employer's insurer is liable to pay such benefits (MCL 500.3114; MSA 24.13114).*

6. INSURANCE — NO-FAULT — INJURED EMPLOYEES — OUT-OF-STATE VEHICLES.

*An employee need only show that an injury occurred while occupying a motor vehicle owned or registered by the employer to recover personal protection insurance benefits from the employer's insurer; the employer's vehicle is not required to be registered in the state or subject to the state's no-fault mandatory security provisions (MCL 500.3114[1], [3]; MSA 24.13114[1], [3]).*

*McCroskey, Feldman, Cochrane & Brock, P.C.* (by *J. Walter Brock*), for the plaintiff.

*William J. Hipkiss Law Office* (by *William J. Hipkiss*) for defendant Detroit Automobile Inter-Insurance Exchange.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry G. Iwasko* and *Warren R. Snyder,* Assistant Attorneys General, for defendant Michigan Department of State Assigned Claims Facility.

*Allaben, Massie, VanderWeyden & Timmer* (by *Keith A. VanderWeyden*), of counsel, for defendant Roadway Express, Inc.

WILLIAMS, C.J. The issue in this case is whether the no-fault act requires an employee's personal no-fault insurer, the employee's self-insured employer, or the Assigned Claims Facility to provide personal protection insurance benefits when a personally insured employee is injured while occupying an employer-owned vehicle that is not required to be registered in Michigan.

Involved in the resolution of this question are §§ 3101(1), 3102(1), and 3114(1), (3) of the no-fault act.[1] MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.* Section 3101(1) states, in part, "The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance . . . ." Section 3102(1) provides, "A nonresident owner or registrant of a motor vehicle not registered in this state shall not operate . . . the vehicle . . . in this state . . . more than 30 days in any calendar year unless he or she continuously maintains security for the payment of benefits." And, critically, § 3114(1) provides, in part, "Except as provided in subsections 2, 3, and 5, a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy . . . if the injury arises from a motor vehicle accident." Subsections

---

[1] See pertinent texts of these sections, *infra,* pp 199, 202.

2 and 5 refer, respectively, to motor vehicles transporting passengers and to motorcycles, neither of which is relevant here.

The critical portion of § 3114 is subsection 3. This subsection provides that an employee "who suffers accidental bodily injury while an occupant of a motor vehicle *owned or registered by the employer,* shall receive personal protection insurance benefits to which the employee is entitled *from the insurer of the furnished vehicle."* (Emphasis added.) We find, however, that an out-of-state vehicle not required to be registered in Michigan and not operated in this state for more than thirty days is not subject to the security provisions or § 3114(3) of the no-fault act and that when an employee is injured while an occupant of such a vehicle, the employee's personal insurer, if there is one, must pay the employee's personal protection benefits under § 3101(1).

### I. FACTS

Roadway Express, a Delaware corporation with its principal place of business in Ohio, is engaged in the interstate transportation of goods. Roadway employed Wayne Parks, a resident of Michigan, as a driver, salesperson, and dock worker. On March 13, 1981, Parks was working inside a Roadway trailer located at Roadway's Muskegon terminal. In the course of lifting a carton of brass fittings, he suffered an injury subsequently diagnosed as an hiatal hernia.

The trailer in which Parks was injured, No. 95836, was owned by Roadway and registered in the State of Tennessee and several states other than Michigan. The tractor to which the trailer was attached was owned by Roadway and licensed and registered in the State of Michigan. Roadway

was self-insured, and thus no no-fault insurance policy covered trailer No. 95836. An uncontested affidavit from Roadway's director of systems and procedures established that the trailer had been operated in Michigan for only three days in 1981, up to and including March 13, 1981. An uncontested affidavit from Roadway's director of equipment registration established that the trailer was not required to be registered under a multistate agreement between the States of Michigan and Tennessee.

On July 15, 1981, Parks filed suit to recover no-fault benefits against Roadway, his self-insured employer, and against the Detroit Automobile Inter-Insurance Exchange, his personal automobile insurer. Parks subsequently added the Department of State Assigned Claims Facility as a defendant. The trial court granted Roadway's motion for summary judgment, finding that Roadway's ownership of trailer No. 95836 could not subject Roadway to liability under the no-fault act because the trailer was not subject to the act's security requirements. The trailer was not required to be registered in Michigan because a multistate registration agreement between Michigan and Tennessee exempted the trailer from the registration requirement and because the trailer had been operated in Michigan for less than thirty days within the calendar year when Parks was injured. The trial court held, without indicating its rationale, that the no-fault act required the DAIIE to provide Parks with no-fault benefits.

The Court of Appeals reversed, finding that the act required Roadway to assume responsibility for Parks' no-fault benefits because Roadway was the self-insured owner of the vehicle furnished to Parks. *Parks v DAIIE,* 138 Mich App 520, 527-529; 360 NW2d 238 (1984). The Court of Appeals rea-

soned that the question whether an owner is *required* to register a vehicle and subject itself to the mandatory security requirements of § 3101 has no bearing on the question whether the owner could be held liable for benefits under §§ 3105 and 3114. *Id.* On June 26, 1985, we granted leave to appeal. 422 Mich 937.

## II. STATUTORY PROVISIONS

The parties are in agreement about two preliminary conclusions. First, the trailer in which Parks was injured was a "motor vehicle" with an identity separate from that of the tractor to which it was attached. Under the no-fault act, "motor vehicle" is defined as "a vehicle, *including a trailer,* operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels." MCL 500.3101(2)(c); MSA 24.13101(2)(c). Accord *Kelly v Inter-City Truck Lines, Inc,* 121 Mich App 208, 209-211; 328 NW2d 406 (1982). For this reason, we look to the registration of the *trailer* to determine which insurer is liable. Second, Parks is entitled to personal protection benefits under the no-fault act because he was using a parked motor vehicle at the time of his injury, and this situation falls within the statutory exception for injuries resulting from contact with property being unloaded from the vehicle. MCL 500.3105, 500.3106(b); MSA 24.13105, 24.13106(b). The only question remaining is which of the three insurers is required to pay Parks benefits, his personal automobile insurer (DAIIE) pursuant to § 3101(1), his employer, as a self-insurer (Roadway) pursuant to §§ 3102(1) and 3114(3), or, if neither of these is liable, the Assigned Claims Facility pursuant to MCL 500.3171 *et seq.;* MSA 24.13171 *et seq.*

To resolve this question, the no-fault act and other relevant statutory provisions must be examined. Our task throughout is to give expression to the underlying legislative purpose by harmonizing different provisions of the same statute, and by construing statutes in pari materia to give the fullest effect to each provision. *People v Smith,* 423 Mich 427, 441; 378 NW2d 384 (1985).

We begin with the first two sections of the no-fault act, which identify vehicles subject to the mandatory security provisions of the act. The first provides:

> The *owner* or registrant *of a motor vehicle required to be registered in this state shall maintain security* for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance. Security shall be in effect continuously during the period of registration of the motor vehicle. [MCL 500.3101(1); MSA 24.13101(1). Emphasis added.]

The second, applicable particularly to nonresident owners or registrants of motor vehicles, provides:

> A nonresident owner or registrant of a motor vehicle not registered in this state shall not operate or permit the vehicle to be operated in this state for an aggregate of more than 30 days in any calendar year unless he or she continuously maintains security for the payment of benefits. [MCL 500.3102(1); MSA 24.13102(1).]

The trailer in which Parks was injured does not appear to be subject to the mandatory security requirements of the act under either of these two provisions. First, § 3101(1) applies only to owners or registrants of vehicles "required to be registered in this state." The Legislature created the High-

way Reciprocity Board and has authorized it to enter into reciprocal compacts with other states regarding the operation of trailers engaged in interstate commerce. MCL 3.161 *et seq.;* MSA 9.1735 *et seq.* Under a compact entered into by the State of Michigan and the State of Tennessee, the trailer in which Parks was injured was *not* required to be registered in Michigan.[2] Therefore, the trailer was not subject to the mandatory security requirement in § 3101(1).

Second, § 3102(1) applies only to vehicles owned by nonresidents and not registered in this state. Security must be maintained for vehicles operated in this state for more than thirty days in a single calendar year. Roadway falls within § 3102(1) because it is a nonresident corporation and because

---

[2] Pursuant to the Michigan vehicle act and the multistate agreement authorized by the highway reciprocity act, Roadway's trailer was not required to be registered in this state. The applicable section of the motor vehicle act provides:

Every motor vehicle, trailer coach, trailer, semitrailer, and pole trailer, when driven or moved upon a highway, shall be subject to the registration and certificate of title provisions of this act except . . . :

(a) A vehicle driven or moved upon a highway in conformance with the provisions of this act relating to manufacturers, transporters, dealers, or nonresidents. [MCL 257.216; MSA 9.1916.]

The highway reciprocity act authorizes reciprocal agreements between and among other jurisdictions:

Notwithstanding any other provision of law to the contrary, the [highway reciprocity] board may enter into and make such reciprocal compacts, agreements or arrangements as the board deems proper or expedient and in the interests of the people of this state, with the proper authorities of other jurisdictions, either individually or with a group of jurisdictions, concerning the fees, charges, taxation, operation and regulation of trucks, tractors, trailers, automobiles, buses, and all other automotive equipment engaged in international, interstate or intrastate commerce upon and over the public highways. [MCL 3.163; MSA 9.1737.]

trailer No. 95836 was not registered in Michigan. However, Roadway's director of systems and procedures attested that trailer No. 95836 had been operated in Michigan for only three days in 1981, up to and including March 13, 1981, the date of Parks' injury. Thus, the trailer was not subject to the mandatory security requirements of § 3102(1) at the time of the injury.

The trailer in which Parks was injured was not subject to the vehicle registration requirements of this state; nor was it subject to the mandatory security requirements of the no-fault act. Nevertheless, the DAIIE contends that the plain language and judicial construction of the priority provisions of the no-fault act permit Roadway to be held responsible for Parks' benefits. Thus, the priority provisions for insurance liability and the case law interpreting them must be examined.

### III. PRIORITY OF PAYMENT

The no-fault act begins with § 3101(1), which for the convenience of the reader is quoted again as follows:

> The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance. Security shall be in effect continuously during the period of registration of the motor vehicle.

The no-fault act then specifies the order in which various potentially liable insurers will be required to cover a claim for benefits. The relevant sections are set forth below to clarify the legislative plan:

(1) *Except as provided in subsections (2), (3),* and
(5), a *personal protection insurance policy* de-
scribed in section 3101(1) *applies to accidental
bodily injury to the person named in the policy,*
the person's spouse, and a relative of either domi-
ciled in the same household, *if the injury arises
from a motor vehicle accident.* . . .

(2) [Addresses motor vehicles transporting pas-
sengers; not relevant here.]

(3) An *employee,* his or her spouse, or a relative
of either domiciled in the same household, *who
suffers accidental bodily injury while an occupant
of a motor vehicle owned or registered by the
employer, shall receive personal protection insur-
ance benefits* to which the employee is entitled
*from the insurer of the furnished vehicle.*

(4) Except as provided in subsections (1) to (3), a
person suffering accidental bodily injury arising
from a motor vehicle accident while an occupant
of a motor vehicle shall claim personal protection
insurance benefits from insurers in the following
order of priority:

(a) The insurer of the owner or registrant of the
vehicle occupied.

(b) The insurer of the operator of the vehicle
occupied.

(5) [Addresses motorcycle operators or passen-
gers; not relevant here.] [MCL 500.3114; MSA
24.13114.]


Sections 3101(1) and 3114(1) set forth the gen-
eral rule of priority: A no-fault insurance policy,
which owners of vehicles required to be registered
in the state must maintain as security, covers all
injuries arising from the use of motor vehicles
suffered by persons named in the policy. In other
words, the general rule is that one looks to a
person's own insurer for no-fault benefits unless
one of the statutory exceptions, subsections 2, 3,

and 5, applies.[3] Thus, under subsection 1, Parks would have to look to his personal insurer, DAIIE, for coverage of his benefits unless one of the statutory exceptions applies.

The only rule of exception that may be applicable to the facts of this case is subsection 3, which deals with employees injured while occupying motor vehicles furnished by their employer. The DAIIE contends that because Parks suffered "bodily injury while an occupant of a motor vehicle owned or registered by" Roadway, Parks should look to Roadway as "the insurer of the furnished vehicle" for benefits. Roadway does not deny that it is the owner and insurer of the vehicle furnished to Parks, but responds that it does not come within the priority provision subsection 3 because the vehicle in which Parks was injured was not required to be registered under the no-fault act.

The problem before us is one of examining the mandatory security provisions and the priority provisions, both of which are central to the purposes of the act. While the act's priority section does not directly address the situation in which security is not required, an analysis of the general provisions of the act and the Legislature's intention reveals who is liable for Parks' no-fault benefits.

Case law confirms our construction of the priority provisions of the no-fault act. This Court has recently held that when an employee is injured by occupying a vehicle not required to be registered

---

[3] Subsection 4 reinforces this conclusion. Those injured while *occupants* of motor vehicles must look to the rules provided in subsections 1, 2, and 3 before applying the priorities listed in subsection 4. The implication of the phrase "owner *or* registrant" was not extensively argued. But we assume subsection 4 does not apply because we read the phrase "owner or registrant of the vehicle occupied" within subsection 4 to be part of the more complete requirement as stated in § 3101(1): "The owner or registrant of a motor vehicle *required to be registered in this state*" (emphasis added).

in this state, the employee's personal insurer should be looked to for coverage. *Lee v DAIIE,* 412 Mich 505; 315 NW2d 413 (1982). In *Lee,* an employee of the United States Postal Service injured his back unloading mail from a government-owned mail truck. Because government-owned vehicles are not subject to registration requirements, MCL 257.216(f); MSA 9.1916(f), the vehicle was not subject to the mandatory security requirements of § 3101(1) of the no-fault act, and hence was uninsured. The Court of Appeals held that the employee's personal insurer could not be held liable for benefits, reasoning that the Legislature did not intend to compensate persons injured in uninsured vehicles. We disagreed, finding that the broad language of § 3105(1), providing that benefits must be paid "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle" required a personal automobile insurer to pay benefits under circumstances in which the vehicle involved was not registered or insured. *Id.,* p 512. We reasoned that this reading of the no-fault act furthered the Legislature's purposes:

> [T]he Legislature, in its broader purpose, intended to provide benefits whenever, as a general proposition, an insured is injured in a motor vehicle accident, whether or not a registered or covered motor vehicle is involved; and *in its narrower purpose intended that an injured person's personal insurer stand primarily liable* for such benefits *whether or not its policy covers the motor vehicle involved and even if the involved vehicle is covered by a policy issued by another no-fault insurer.* [*Id.,* p 515. Emphasis added.]

The emphasized portion of the quotation makes clear that our decision was based on the legislative

decision to impose primary responsibility upon the employee's personal insurer. The decision did not turn on the absence of coverage for the employer's vehicle. This distinction is critical in this case, because, while Roadway's trailer is not *required* to be registered, Roadway *is self-insured,* and therefore trailer No. 95836 cannot be considered uninsured in the same sense as the postal vehicle in *Lee.*

Two Court of Appeals opinions support our analysis in *Lee.* In *Covington v Interstate System,* 88 Mich App 492; 277 NW2d 4 (1979), the Court of Appeals also held that an employee could not recover personal protection benefits from his employer's insurer when the employer's vehicle was not required to be registered in this state. The facts in *Covington* are nearly identical to those in this case. An employee was driving his employer's vehicle, which was registered and licensed in another state. The employer was self-insured, and refused to provide benefits on the ground that the truck being driven by the employee was not a vehicle subject to the requirements of the no-fault act. *Id.,* p 493. The Court of Appeals agreed with the employer, reasoning that the express language of § 3101(1) subjected only vehicles required to be registered in this state to the requirements of the act. *Id.,* pp 493-494.

While *Covington* was decided before *Lee,* another decision released following *Lee* furthers this analysis of the act. In *Citizens Ins Co v Roadway Express, Inc,* 135 Mich App 465; 354 NW2d 385 (1984), lv den 421 Mich 857 (1985), the Court of Appeals again held that an employee's personal automobile insurer rather than the self-insured employer was liable for no-fault benefits. The facts in *Citizens* are remarkably similar to those in the case at bar: Roadway's employee was injured in a

trailer that was licensed in another state and had not been in this state long enough to require insurance coverage under § 3102(1). The primary issue in the case was whether the trailer was a "motor vehicle" separate from the tractor. After finding that the trailer was a separate "motor vehicle," the Court concluded that the trailer was "uninsured" for purposes of the no-fault act and held the employee's personal automobile insurer liable for benefits. *Id.,* pp 469, 471.

From a clear reading of the no-fault act and the reasoning of the cited case law, we find the following: First, the plain language of § 3101(1) subjects only those vehicles required to be registered in this state to the mandatory security requirements. The fact that a vehicle is actually covered by an insurance policy, or that the owner of the vehicle is self-insured, does not alter whether the vehicle itself need or need not conform to the requirements of the act. Second, the policy of the Legislature was to provide a method whereby persons injured in automobile accidents would be readily provided relief from the results of their injury. Third, the primary method of accomplishing this result, from the general rule in § 3114(1), is that one looks to one's own insurer for no-fault benefits unless one of the statutory exceptions applies. Fourth, the exception of an employee injured in an employer's vehicle contained in subsection 3 of § 3114 applies only in the case in which the insured vehicle is required to be registered in this state. Fifth, because the vehicle was not registered in this state and thus the exception of subsection 3 does not apply, we look to the general intention of the Legislature in § 3114(1) to provide compensation for liability through the injured person's personal insurer.

The no-fault act was intended to minimize uncertainties and to provide a relatively simple means of compensating those injured in automobile accidents. Holding the employee's personal insurer liable for benefits when the employer's vehicle is not required to be registered best effects this goal.[4]

In conclusion, we hold that when an employee is injured in an employer's out-of-state vehicle, which is not required to be registered in this state under the motor vehicle registration act and the pertinent multistate agreement, and when the vehicle is not subject to the security provisions of the no-fault act because it has not been operated in this state for more than thirty days within the calendar year, the employee's personal automobile insurer, in this case the DAIIE, is liable for no-fault benefits under §§ 3105 and 3114(1).

## IV. REMAINING ISSUES

Two ancillary issues remain in this case. The first is whether § 3163 of the no-fault act subjects

[4] We have previously held that an employee can recover no-fault benefits from the employee's self-insured employer when injured in the employer's vehicle, despite the exclusivity provision in the Workers' Disability Compensation Act. *Mathis v Interstate Motor Freight,* 408 Mich 164; 289 NW2d 708 (1980). In *Mathis* and the cases consolidated with it, the primary question was whether the exclusive remedy provision of the Workers' Disability Compensation Act precluded an employee from recovering no-fault benefits from a self-insured employer when the employee was injured in the course of employment while occupying an employer-owned vehicle. We held that liability for no-fault benefits was based on the employer's status *as an insurer* rather than as an employer, and therefore the exclusive remedy provision was not a bar. *Id.,* p 184. None of the cases in *Mathis* raised the question regarding vehicles not required to be registered in this state; thus, *Mathis* cannot be cited as controlling the question in the case at bar. See also *Becker v Wolverine Ins Co,* 113 Mich App 572; 317 NW2d 344 (1982) (*Mathis* does not preclude liability of an employee's own insurer for no-fault benefits when the employer's vehicle is not insured).

Roadway to liability for Parks' no-fault benefits.[5] That section states:

> An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, shall be subject to the personal and property protection insurance system set forth in this act. [MCL 500.3163(1); MSA 24.13163(1).]

The DAIIE contends that Roadway was required to file the § 3163 certificate because it was an "insurer." The DAIIE also argues that Parks' injury arose out of the use of the trailer by an out-of-state resident because Roadway is a Delaware corporation with its principal place of business in Ohio. Assuming this to be true, then Roadway is "subject to the . . . insurance system" and must cover Parks' benefits.

This argument must fail under the plain language of the statute. First, Roadway's status as a self-insurer does not place it in the category of "[a]n insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state . . . ." MCL 500.3163(1); MSA 24.13163(1). See also MCL 500.3101(3); MSA 24.13101(3) (specifically addressing insurers "duly authorized to transact business"; by contrast, self-insurers are addressed in § 3101(4) with language stating that the required

---

[5] This issue was not timely raised in the circuit court, in the Court of Appeals, or in this Court. However, it occupied considerable time at the oral argument before this Court, and for purposes of judicial economy, we address it here.

security "may be provided by any other method approved by the secretary of state as affording security equivalent to that afforded by a policy of insurance"). Cf. MCL 500.3105(1); MSA 24.13105(1) (referring generally to an insurer's liability to pay benefits). Because the language of § 3163 is specific to "authorized" insurers, this is not a situation in which the "context" permits treating self-insurers as insurance companies, pursuant to § 3101(4).

Second, § 3163 applies to situations in which the injury arises out of the ownership, operation, maintenance, or use of a motor vehicle by an out-of-state resident. *Mills v Auto-Owners Ins, Inc,* 413 Mich 567, 571-572; 321 NW2d 651 (1982). In *Mills,* the injured out-of-state motorcyclist was entitled to no-fault benefits because, even though a motorcycle is not a "motor vehicle" as defined in the no-fault act, the other party involved in the accident was using a motor vehicle. The *Mills* Court held that § 3163 did not require the insurer of the out-of-state motorcyclist to cover his injuries because the injuries did not arise from the use of a "motor vehicle" *by* the out-of-state resident; rather, the insurer of the Michigan-insured vehicle was required to cover the motorcyclist's injuries. Accord *Guibord v Farmers Ins Exchange,* 110 Mich App 218; 312 NW2d 219 (1981). Because the injury at issue in the case at bar arose out of the use of the trailer by Parks, a Michigan resident, § 3163 is simply not applicable.

Some may consider § 3163 to apply to Roadway because the accident arose from Roadway's *ownership* of the motor vehicle. However, the mere fact that Roadway owned trailer No. 95836 would not subject it to liability for Parks' injury. The critical word is the possessive "its" in the phrase "who is insured under its automobile liability insurance policies." The "its" refers to the "insurer" in the

opening phrase of the section; therefore Roadway, as the out-of-state resident owner of the implicated motor vehicle, would be subject to liability only if it were an "insurer authorized to transact automobile liability insurance . . . in this state." Because Roadway is not "an insurer authorized to transact automobile liability insurance," it is not subject to "the personal and property protection insurance system set forth in this act." Thus, Roadway is not liable for Parks' injury.

The final question to be resolved in this case is whether the DAIIE can escape liability for Parks' injuries and shift the burden of coverage to the Assigned Claims Facility. A person entitled to no-fault benefits may obtain them through an assigned claims plan "if no personal protection insurance is applicable to the injury, no personal protection insurance applicable to the injury can be identified, . . . or the only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed." MCL 500.3172; MSA 24.13172.

The preceding analysis of the no-fault act and the decisions interpreting it make clear that Parks' own personal protection insurance is "applicable to the injury." To reiterate: Roadway cannot be held liable for Parks' no-fault benefits as the self-insured employer which furnished the vehicle because the vehicle was not required to be registered in Michigan. However, this does not mean that no personal protection insurance applies to the injury. On the contrary, §§ 3105 and 3114(1) permit Parks' personal automobile insurer, the DAIIE, to be held liable for injuries arising out of Parks' use of the trailer, in spite of the fact that

Roadway did "cover" the vehicle as a self-insurer. See *Lee, supra,* pp 515-516; *Citizens, supra,* p 471.

For all the reasons above, we reverse the decision of the Court of Appeals and find that Parks' personal liability insurer, DAIIE, must pay his personal protection benefits because Roadway's trailer No. 95836 was a vehicle which was not required to be registered in Michigan and was not subject to the security provisions of the no-fault act.

BRICKLEY, BOYLE, and RILEY, JJ., concurred with WILLIAMS, C.J.

CAVANAGH, J. (*dissenting*). The majority holds that an employee's personal no-fault insurance carrier is liable for no-fault benefits when the employee is injured while occupying an employer-owned motor vehicle that is not required to be registered in this state or subject to the state's mandatory security provisions under the no-fault act. I dissent from this holding because the unambiguous language of the priority provisions of the no-fault act evinces a legislative intent to hold an employer's insurer primarily liable for personal protection insurance benefits when an employee is injured while occupying a motor vehicle owned or registered by his employer. Since Roadway, the injured employee's employer, is self-insured, Roadway should be held liable for the payment of plaintiff's personal protection insurance benefits.

I

The no-fault act specifies the order of priority between insurers to pay personal protection insurance benefits. Section 3114 of the act establishes this priority:

(1) Except as provided in subsections (2), (3), and

(5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. . . .

(2) [Addresses motor vehicles transporting passengers; not relevant here.]

(3) An employee, his or her spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

(4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

(a) The insurer of the owner or registrant of the vehicle occupied.

(b) The insurer of the operator of the vehicle occupied.

(5) [Addresses motorcycle operators or passengers; not relevant here.] [MCL 500.3114; MSA 24.13114.]

The personal protection insurance policy described in § 3101(1) refers to the mandatory security requirement for an owner or registrant of a motor vehicle required to be registered in this state. MCL 500.3101(1); MSA 24.13101(1).[1] Hence, §§ 3101(1) and 3114 establish, as a general rule of priority, that one's personal no-fault insurer is

[1] Section 3101(1) provides that "[t]he owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance. Security shall be in effect continuously during the period of registration of the motor vehicle."

liable for benefits for all injuries arising out of the use of any motor vehicle by the named insured. However, § 3114(2), (3), and (5) are exceptions to this general rule. Subsection (3) is relevant to the facts of this case. To repeat, this subsection provides as follows:

An *employee,* his or her spouse, or a relative of either domiciled in the same household, *who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits* to which the employee is entitled *from the insurer of the furnished vehicle.* [Emphasis added.]

Pursuant to the unambiguous language of this subsection, an employee need only show that he was injured while occupying a motor vehicle owned or registered by his employer in order to recover benefits from his employer's insurer. The plain language of the statute does not require that the employer's motor vehicle be registered in this state or subject to the state's mandatory security provisions under the no-fault act. Furthermore, as defined in the act, a motor vehicle does not have to be registered in this state:

"Motor vehicle" means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels. [MCL 500.3101(2)(c); MSA 24.13101(2)(c).]

Where, as here, "the Legislature uses certain and unambiguous language, the plain meaning of the statute must be followed." *Browder v Int'l Fidelity Ins Co,* 413 Mich 603, 611; 321 NW2d 668 (1982), citing *Grand Rapids v Crocker,* 219 Mich 178, 182; 188 NW 221 (1922); *Dussia v Monroe Co*

*Employees Retirement System,* 386 Mich 244, 248; 191 NW2d 307 (1971); 2A Sands, Sutherland Statutory Construction (4th ed), §§ 46.01 and 46.04. The certain and unambiguous language of § 3114(1) and (3) establishes that the Legislature intended that the insurers of employers be liable for personal protection insurance benefits when an employee is injured while occupying an employer-owned or registered motor vehicle. Unlike the majority, I do not believe that the Legislature intended that an employer's insurer's liability for no-fault benefits be conditioned upon the employer's vehicle being registered in this state or subject to this state's mandatory security provisions.

II

We have previously held that an employee can recover no-fault benefits from a self-insured employer when the employee is injured in the employer's vehicle despite the exclusivity provision in the Workers' Disability Compensation Act. *Mathis v Interstate Motor Freight,* 408 Mich 164, 175; 289 NW2d 708 (1980). In *Lee v DAIIE,* 412 Mich 505, 516; 315 NW2d 413 (1982), we held that an employee's personal no-fault insurer may be liable for no-fault benefits when the employer's vehicle is uninsured. Our holding in *Lee* was specifically limited to the facts of that case, which involved an uninsured motor vehicle. Furthermore, in concluding that the sections of the no-fault act requiring certain vehicles to be insured have nothing to do with those sections setting forth whether benefits are payable and which insurer is liable, we stated the following:

> There is no language qualifying the right to benefits or the insurer's duty to pay them with a

*requirement that such motor vehicle be a "registered," "insured," or "covered" motor vehicle as indeed might easily have been done had the Legislature so intended. The requirement is merely that the vehicle involved be a "motor vehicle" used, maintained, operated or owned "as a motor vehicle."*

*We are not left to speculate about whether the Legislature intended the expression "motor vehicle" to mean a covered or registered or insured motor vehicle when it used those words as an expression of art throughout the statute. The meaning of that expression is explicitly set down in the definitional section of the act, § 3102(2)(c) . . . .*

\* \* \*

*Conspicuously absent is any language limiting "motor vehicle" to one required to be registered in the state* or for which no-fault security must be maintained.[4]

---

[4] It is interesting to note that while mopeds, like other categories of vehicles . . . are not required to be no-fault covered because under MCL 257.216; MSA 9.1916 they are not required to be registered in the State of Michigan, the section defining "motor vehicle" in the no-fault act, § 3101(2)(c), specifically and separately excludes motorcycles and mopeds, but not the others. That fact, we think, adds further weight to the point that the *Legislature intended that the kinds of vehicles which constitute "motor vehicles" under the benefit payment provisions of the act and the kinds of vehicles which must be registered and covered under a no-fault policy are separate subjects.*

---

[412 Mich 512-513. Emphasis added.]

A consistent reading of both *Mathis* and *Lee* establishes the rule that where there is no insurer of an employer's vehicle, the no-fault insurer of the injured employee's personal automobile may be liable for payment of personal protection insurance benefits. However, where the employer's vehicle is insured, the employer's insurer is liable for the payment of personal protection insurance ben-

efits. Since Roadway self-insured the trailer upon which plaintiff was injured, § 3114(3) would apply, and Roadway, rather than DAIIE, is liable for the payment of plaintiff's personal protection insurance benefits.

## CONCLUSION

This analysis furthers the legislative purposes in enacting the no-fault act. Where an employer's vehicle is uninsured, the employee's personal insurer is liable for the payment of benefits, thus giving effect to the broad purpose of the no-fault act "to provide benefits whenever, as a general proposition, an insured is injured in a motor vehicle accident, whether or not a registered or covered motor vehicle is involved . . . ." *Lee, supra,* 515. When an employer has insured a motor vehicle, the employer's insurer is liable for the payment of benefits, thus giving effect to the priority established by the Legislature in § 3114(1) and (3). For these reasons, I would affirm the Court of Appeals reversal of the trial court.

ARCHER, J., concurred with CAVANAGH, J.

LEVIN, J. Wayne Parks was injured while working in a trailer owned by his employer, Roadway Express, Inc. The parties are in agreement that Parks is entitled to receive personal protection (no-fault) benefits pursuant to § 3107 of the no-fault automobile liability act.[1]

The question presented is whether such benefits are payable by Detroit Automobile Inter-Insurance Exchange, the insurer of Parks' personal automobile, or by Roadway Express, his self-insured em-

---

[1] MCL 500.3107; MSA 24.13107.

ployer, or by an insurer assigned by the Assigned Claims Facility.[2]

Section 3114 of the no-fault act provides that a no-fault insurance policy applies to accidental bodily injury to the person named in the policy, but that an employee who suffers accidental bodily injury while an occupant of "a motor vehicle *owned or registered* by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle."[3] (Emphasis supplied.)

The trailer was not registered or required to be registered by Roadway because Roadway is a foreign corporation, and such an owner or registrant of a motor vehicle is not required to register it if it is operated in this state—as was the trailer—for less than thirty days in any calendar year.[4]

Roadway Express, pursuant to § 3101(4) of the no-fault act, had qualified as a self-insured.[5]

I

Roadway Express, and the majority, would read the term "owner or registrant of a motor vehicle" as meaning "owner or registrant of a motor vehicle required to be registered in this state,"[6] viewing the omission of the words "required to be

---

[2] MCL 500.3171; MSA 24.13171.

[3] MCL 500.3114(3); MSA 24.13114(3).

[4] MCL 500.3102; MSA 24.13102.

[5] MCL 500.3101(4); MSA 24.13101(4).

[6] *The owner or registrant of a motor vehicle required to be registered in this state* shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance. Security shall be in effect continuously during the period of registration of the motor vehicle. [MCL 500.3101(1); MSA 24.13101(1). Emphasis supplied.]

registered in this state" in § 3114 and other sections of the act where the words "owner or registrant" appear[7] as intending no change in meaning, but rather as a shorthand version of the full expression.

I agree with DAIIE, the Department of State (on behalf of the Assigned Claims Facility), and Justice CAVANAGH that the term "owner or registrant of [a] motor vehicle," as used in § 3114, is not qualified by the concept "required to be registered in this state."

A

While either construction of the act is maintainable, I reach this conclusion because I think it is more consonant with a reading of the act as a whole.

The act provides that a person is not entitled to no-fault benefits in three circumstances: (1) where the person was using a vehicle he had taken unlawfully, (2) where the person was the owner or registrant of a motor vehicle involved in the accident with respect to which no-fault insurance or security was not in effect, or (3) where the person was "not a resident of this state, was an occupant of a motor vehicle not registered in this state and was not insured by an insurer which has filed a certification in compliance with section 3163."[8]

Section 3163 provides that an insurer authorized to transact automobile liability insurance and personal and property protection (no-fault) insurance in this state shall be subject to the personal and property protection (no-fault) insurance system set forth in the no-fault act in respect to a motor

[7] See ns 10 and 11 and accompanying text.
[8] MCL 500.3113(c); MSA 24.13113(c).

vehicle owned, operated, maintained, or used by an out-of-state resident insured by the insurer.[9]

The Legislature thus indicated an intention that an insurer who has been authorized to write no-fault insurance in this state shall provide no-fault benefits in respect to vehicles not registered in this state operated by out-of-state residents. Nonresident occupants of a motor vehicle not registered in this state are generally entitled to no-fault benefits from the insurer of the out-of-state vehicle.

B

The concept "owned or registered" is repeated in the priority sections of the act applicable, for example, where the injured person does not have a policy of no-fault insurance. The priority sections of the act provide that, in such a case, a person suffering accidental bodily injury shall first claim no-fault benefits from the "insurer of the owner or

---

[9] (1) An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, shall be subject to the personal and property protection insurance system set forth in this act.

(2) A nonadmitted insurer may voluntarily file the certification described in subsection (1).

(3) When a certification filed under subsections (1) or (2) applies to accidental bodily injury or property damage, the insurer and its insureds with respect to that injury or damage have the rights and immunities under this act for personal and property protection insureds, and claimants have the rights and benefits of personal and property protection insurance claimants, including the right to receive benefits from the electing insurer as if it were an insurer of personal and property protection insurance applicable to the accidental bodily injury or property damage. [MCL 500.3163; MSA 24.13163.]

registrant of the vehicle" occupied[10] by the injured person or, where not an occupant, of the vehicle involved in the accident,[11] before claiming insurance benefits from the operator of the vehicle occupied or involved in the accident.

Reading the expression "owned or registered" as qualified by the concept "required to be registered" would mean that an insurer of an out-of-state vehicle who had complied with § 3163 would not be subject to liability for the payment of no-fault benefits to a pedestrian who did not have his own no-fault insurance and who was struck by the out-of-state vehicle which it had insured. This might mean that in such a case an insurer assigned by the Assigned Claims Facility rather than the insurer of the out-of-state vehicle would be responsible for the payment of no-fault benefits. That does not appear to be consonant with the apparent purpose of § 3163 to subject insurers of out-of-state vehicles who are authorized to transact automobile insurance in this state to liability for the payment of no-fault benefits in general as if the vehicle had been registered and insured for no-fault benefits. I see no basis, consistent with § 3163, for differentiating the liability of insurers depending on whether an insured vehicle was or was not registered in this state.

II

It is asserted, however, that § 3163 does not govern in the instant case because Roadway Express is self-insured and is not an insurer authorized to transact automobile insurance. Roadway Express qualified as a self-insured pursuant to

---

[10] MCL 500.3114; MSA 24.13114.
[11] MCL 500.3115; MSA 24.13115.

§ 3101(4) of the no-fault act,[12] and the Department of State issued a certificate of self-insurance stating that the certificate "covers all vehicles owned by Roadway." Presumably, Roadway had at least one vehicle registered in Michigan or it would not have qualified as a self-insured and obtained such certificate.[13] It was, in that sense, like an insurance company that had obtained authorization to transact automobile insurance in this state because it wished to write insurance covering one or more vehicles.

The stated purpose of § 3101(4) is to subject self-insurers to "all the obligations and rights of an insurer under this chapter." "[T]his [the no-fault] chapter" does not purport to provide for obligations and rights of insurers who are not authorized to transact automobile insurance in this state. Since the no-fault chapter does not provide for obligations and rights of an insurer not so authorized to transact insurance business in this state, I would read the expression "all the obligations and rights of an insurer under this chapter" as meaning all the obligations and rights as an insurer authorized to transact automobile insurance in

---

[12] (4) Security required by subsection (1) may be provided by any other method approved by the secretary of state as affording security equivalent to that afforded by a policy of insurance, if proof of the security is filed and continuously maintained with the secretary of state throughout the registration period. The person filing the security has all the obligations and rights of an insurer under this chapter. When the context permits, "insurer" as used in this chapter, includes any person filing the security as provided in this section. [MCL 500.3101(4); MSA 24.13101(4).]

[13] Roadway's application for self-insured status sworn to August 1, 1980, showed that it had 626 motor vehicles registered in Michigan. The "conditions for qualifying as a self-insurer with the Secretary of State" provide that an applicant must have "at least 26 motor vehicles to be registered in Michigan."

this state, and, thus, as including the obligations of an insurer under § 3163.

Further, it would not, again, be consonant with the objectives of the act to construe it as providing that a self-insured person has less responsibility than an insurer, and to in effect transfer from a self-insured to insurers, such as, in this case, Parks' insurer (DAIIE) or an insurer assigned by the Assigned Claims Facility, responsibility that an insurer of the vehicle would have if it were insured rather than self-insured.

I would affirm the judgment of the Court of Appeals.